**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF NORTH CAROLINA**
**CHARLOTTE DIVISION**
**3:20-cv-589-MOC**

| | | |
|---|---|---|
| **DEBORAH ANNETTE HELMS** | ) | |
| | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | **ORDER** |
| | ) | |
| | ) | |
| **COMMISSIONER OF SOCIAL SECURITY,** | ) | |
| | ) | |
| | ) | |
| | ) | |
| Defendant. | ) | |

**THIS MATTER** is before the Court on Plaintiff's Motion for Summary Judgment, (Doc. No. 17), Defendant's Motion for Summary Judgment, (Doc. No. 19), and Plaintiff's Motion for Leave to File Excess Pages, (Doc. No. 23).

## I.    BACKGROUND

Plaintiff applied for Disability Insurance Benefits and Supplement on September 11, 2014 and based her application on a disability beginning December 13, 2013. (Doc. No. 18 at 5). Plaintiff was insured through September 2019. (Id.) Administrative law judge ("ALJ") Paul Goodson held a hearing to review her claim in February 2018 and denied it in June 2018. (Id.) The Appeals Council granted Plaintiff's request for an appeal and ALJ Goodson held a second hearing in November 2019. (Id.) He denied Plaintiff's applications on February 26, 2020, finding that, while Plaintiff's disabilities significantly limited the work duties she could perform, she was nonetheless able to undertake work existing within the national economy and, therefore, that

-1-

Plaintiff was not disabled within the meaning of the Social Security Act and applicable regulations. (Id. at 6; see also Doc. No. 20 at 2–3).

Plaintiff Deborah Helms filed a Complaint in this matter on October 26, 2020, to review the Social Security Administration decision denying her claim for disability benefits under the Social Security Act. (Doc. No. 1). The Government responded with an Answer on April 21, 2021, (Doc. No. 13), and submitted the Administrative Record underlying the Social Security Administration's decision in Plaintiff's case, (Doc. No. 14).

Plaintiff moved for Summary Judgment on August 2, 2021, (Doc. No. 17), and the Government moved for Summary Judgment on October 1, 2021, (Doc. No. 19). For the following reasons, Plaintiff's Motion to Dismiss is **DENIED**, the Government's Motion is **GRANTED**, and this case will be **DISMISSED**.

In addition, Plaintiff also filed a Motion for Leave to File Excess Pages to further expand on her constitutional separation of powers argument on October 20, 2021. The Plaintiff filed these excess pages with the Court and the Court considered them in reaching its decision, so the Court will **GRANT** this motion.

## II.        STANDARD OF REVIEW

In considering cross-motions for summary judgment, the Court "examines each motion separately" under Federal Rule of Civil Procedure 56. Desmond v. PNGI Charles Town Gaming, 630 F.3d 351, 354 (4th Cir. 2011). The Court reviews each motion on its own merits to determine if "either of the parties deserve judgment as a matter of law." Rossignol v. Voorhaar, 316 F.3d 516, 523 (4th Cir. 2003) (internal quotation omitted).

The Court has the power in Social Security cases to affirm, modify, or reverse the

-2-

Commissioner's decision without remanding the case for a new hearing. 42 U.S.C. § 405(g). A review of the Commissioner's decision examines whether substantial evidence supports the decision, and whether the Commissioner applied the correct legal standards in coming to their decision. Johnson v. Barnhart, 343 F.3d 650, 653 (4th Cir. 2005). The threshold of evidence is not high. It requires relevant evidence that a reasonable person would accept as adequate. Biestek v. Berryhill, 139 S. Ct. 1148, 1153 (2019) (quoting 42 U.S.C. § 405(g)). "It consists of more than a mere scintilla of evidence but may be less than a preponderance." Pearson v. Colvin, 810 F.3d 204, 207 (4th Cir. 2015) (internal quotation omitted).

The Court does not reweigh conflicting evidence, make credibility determinations, or substitute its judgment for the ALJ's when it conducts substantial evidence review. Hancock v. Astrue, 667 F.3d 470, 472 (4th Cir. 2012). "Where conflicting evidence allows reasonable minds to differ as to whether a claimant is disabled, the responsibility for that decision falls on the [ALJ]." Id. So even if the Court would have decided the case differently given the evidence presented, it must defer to the Commissioner and the ALJ if their decision is supported by substantial evidence. Blalock v. Richardson, 483 F.2d 773, 775 (4th Cir. 1972). Therefore, the issue is not if the claimant is disabled, but instead if the ALJ's finding that the claimant is not disabled is supported by evidence and was made by applying relevant law. Craig v. Chater, 76 F3d 585, 589 (4th Cir. 1996).

## III.    DISCUSSION

A. *Plaintiff did not Suffer a Cognizable Injury Under Collins and Therefore Lacks Standing to Bring her Separation of Powers Claim*

Plaintiff argues that the decision denying her benefits is constitutionally defective because the ALJ who decided her case was appointed by Commissioner Andrew Saul. (Doc. No.

18 at 5–8). Plaintiff argues that Commissioner Saul was unconstitutionally protected from removal from office under the Supreme Court's decisions in <u>Seila Law</u> and <u>Collins</u>. <u>See</u> <u>Seila Law, LLC v. Consumer Fin. Prot. Bureau</u>, 140 S.Ct. 2183 (2020); <u>Collins v. Yellen</u>, 141 S.Ct. 1761 (2021). In each of these cases, the Supreme Court considered a federal agency with a single director who, under the applicable statute, could only be removed by the President "for cause." The Supreme Court held that this "for cause" removal protection was unconstitutional in the case of these two agencies.

This has led some observers, including the Office of Legal Counsel (as Plaintiff notes in her memorandum), to conclude that the Commissioner of the Social Security Administration is also unconstitutionally protected from removal from office. This may well be a sound application of <u>Seila Law</u> and <u>Collins</u>, although there are significant differences between the Social Security Administration and the agencies in those cases. For instance, the Social Security Administration does not have the power to bring enforcement actions, unlike the Consumer Financial Protection Bureau in <u>Seila Law</u>. <u>See</u> <u>Cooper v. Saul</u>, No. 21-CV-38-CJM-MAR, 2021 WL 2908112 at *1–2 (N.D. Iowa July 9, 2021) (citing <u>Seila Law</u>, 140 S.Ct. at 2194).

However, the Court declines to reach the merits of this question. The Court finds that Plaintiff has not shown that Commissioner Saul's protection from removal from office caused a cognizable injury to her claim for benefits. Without such a nexus, Plaintiff does not have standing to litigate the constitutionality of the Social Security Administration's structure. "A party has standing to assert a claim only if the party suffered 'an injury to himself that is likely to be redressed by a favorable decision.'" <u>Id.</u> at *2 (quoting <u>Simon v. E. Ky. Welfare Rights Org.</u>, 426 U.S. 26, 38 (1976)). Even if Plaintiff were to prevail on the merits of her separation of

-4-

powers claim, there is no evidence that it would lead to a different disposition of the underlying merits of Plaintiff's claim for benefits because there is no reason to think that the decision in Plaintiff's case was in any way influenced by Commissioner Saul's protection from removal from office. Therefore, this Court finds that Plaintiff does not have standing.

The Supreme Court has yet to consider what a plaintiff must do to demonstrate that she was harmed by an unconstitutional removal protection provision, writing in <u>Collins</u> that this question "should be resolved in the first instance by the lower courts." <u>Collins</u>, 141 S. Ct. at 1789. But the examples provided by the Supreme Court in <u>Collins</u> of situations in which a plaintiff was actually harmed by an unconstitutional removal protection provision suggest that the bar is quite high. The Supreme Court wrote that a plaintiff could be harmed by an unconstitutional removal protection provisions where the President "had made a public statement expressing displeasure with actions taken by a Director and had asserted that he would remove the Director if the statute did not stand in the way" or where "a President had attempted to remove a Director but was prevented from doing so by a lower court decision holding that he did not have 'cause' for removal." <u>Id.</u>

In this case, Plaintiff has not plead facts even remotely close to either of these scenarios. The Court finds that it is implausible that the Commissioner's protection from removal from office, whether constitutional or not, could have affected ALJ Goodson's decision or any other aspect of the administrative litigation in a material way. Because Plaintiff has not shown that she was in any way injured by the removal protection provision, she does not have standing to litigate its constitutionality.

In addition, the Government argues that Acting Commissioner Berryhill, who as <u>Acting</u> Commissioner was not protected from removal from office, was competent to ratify the appointment of ALJ Goodson and cure any potential constitutional defect. (Doc. No. 20 at 6–7). The Court agrees with the government that if Plaintiff was somehow injured by the original decision, the ratification of ALJ Goodson's appointment by Acting Commissioner Berryhill adequately cured any such injury. Therefore, the Court holds in the alternative that any injury to Plaintiff resulting from Commissioner Saul's appointment of ALJ Goodson was cured by Commissioner Berryhill's ratification and, therefore, that Plaintiff lacks standing.

However, as explained above, the Court finds that Plaintiff was not injured by Commissioner Saul's protection from removal from office. Therefore, the Court holds that Plaintiff would lack standing in this case even if ALJ Goodson's appointment had not been subsequently ratified by Acting Commissioner Berryhill.

   B.   *The ALJ's Decision was Sound and Substantial Evidence Exists to Support It*

Plaintiff also argues that the ALJ failed to adequately weigh the opinion of Plaintiff's treating physician. (Doc. No. 18 at 8–12). Plaintiff asserts that "[t]he ALJ discussed some of Dr. Tsering's findings, but did not weigh his opinion or explain how he incorporated those findings into the RFC." (<u>Id.</u> at 9). Plaintiff argues that this omission violated the well-established "treating physician rule." (<u>Id.</u> at 10). As a result, Plaintiff contends that the ALJ failed to build "an accurate and logical bridge from the evidence to his conclusion" in Plaintiff's case, with "no clear window into the ALJ's reasoning." (<u>Id.</u> at 11–12). Therefore, Plaintiff argues that the Court should remand this case.

The Court finds that Plaintiff's reasoning is based on a faulty premise. As the Government points out, "Dr. Tsering did not give a medical opinion as to Plaintiff's functional

-6-

limitations. So there was no such medical opinion for the ALJ to weigh." (Doc. No. 20 at 16). While Plaintiff points to her extensive treatment history with Dr. Tsering, she has not identified a medical opinion by Dr. Tsering evaluating her ability to work in different occupational capacities. While Dr. Tsering's testimony as to Plaintiff's condition is an important part of the evidence in this case (and was considered by the ALJ at length, see Doc. No. 14-3 at 24–26), the ALJ did not err by failing to weigh Dr. Tsering's opinion because Dr. Tsering did not issue a formal medical opinion on the specific issue of Plaintiff's occupational capacity.

In response, Plaintiff argues that Dr. Tsering did "offer[] medical opinions on Helms's functioning" which "the ALJ did not reconcile … with the other evidence." (Doc. No. 24 at 6). But this argument suffers from the same faulty premise. The ALJ does not appear to have found—nor does the government argue—that Dr. Tsering did not offer any medical opinion at all. Dr. Tsering opined on Plaintiff's medical condition. But he does not appear to have professionally evaluated Plaintiff's occupational capacity. The ALJ does appear to have given substantial consideration to Dr. Tsering's testimony. (Doc. No. 14-3 at 24–26). But the ALJ was not required to evaluate it with the same degree of rigor that would be necessary in the case of a full-fledged occupational assessment.

Furthermore, as previously discussed, the Court must defer to the Commissioner and the ALJ if their decision is supported by substantial evidence. Blalock, 483 F.2d at 775. The ALJ appears to have considered Plaintiff's functional limitations and the testimony of a vocational expert witness and reached a decision that was adequately supported by this evidence, which the Court finds is substantial. Therefore, the Court must defer to the Commissioner and the ALJ.

**ORDER**

**IT IS, THEREFORE, ORDERED** that Plaintiff's Motion for Summary Judgment
(Doc. No. 17) is **DENIED**, Defendant's Motion for Summary Judgment (Doc. No. 19) is
**GRANTED**, and this case is **DISMISSED**. Plaintiff's Motion for Leave to File Excess Pages
(Doc. No. 23) is **GRANTED**.

Signed: December 1, 2021

Max O. Cogburn Jr.
United States District Judge